ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Gilbane Building Company | ) ASBCA No. 57206 |
| | ) |
| Under Contract No. W9126G-07-C-0043 | ) |

APPEARANCE FOR THE APPELLANT:    Paul H. Sanderford, Esq.
    Sanderford & Carroll, P.C.
    Temple, TX

APPEARANCES FOR THE GOVERNMENT:    Thomas H. Gourlay, Jr., Esq.
    Engineer Chief Trial Attorney
    Lloyd R. Crosswhite, Esq.
    District Counsel
    Kendra M. Laffe, Esq.
    Dawn-Carole Harris, Esq.
    Engineer Trial Attorneys
    U.S. Army Engineer District, Ft. Worth

## OPINION BY ADMINISTRATIVE JUDGE JAMES

This appeal arises from the contracting officer's (CO's) February 2010 decision which denied the $167,275 certified claim of Gilbane Building Company (Gilbane) that alleged the wrongful government rejection of Gilbane's first elevator subcontractor, PKD, Inc. (PKD). The Board has jurisdiction of the appeal under the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101-7109. The parties have agreed to submit the appeal on the written record under Board Rule 11. The record includes the government's Rule 4 file and the declarations submitted with the parties' briefs. We decide entitlement only.

## FINDINGS OF FACT

1. On 11 June 2007, the U.S. Army Engineer District, Fort Worth (USACE) issued Solicitation No. W9126G-07-R-0072 for completion of design and construction of the Battlefield Health and Trauma (BHT) Research Facility, Fort Sam Houston, Texas (R4, tab 4 at 1[1]).

---

[1] Rule 4 cites are to Bates numbers less extra 0s, *e.g.*, page "4-000002" is "R4, tab 4 at 2."

2. On 29 September 2007, the USACE awarded Contract No. W9126G-07-C-0043 (BHT contract) to Gilbane for the BHT Research Facility for a $91,998,321 "Guaranteed Maximum Price" (R4, tab 4 at 2-4, 6).

3. The BHT contract included, *inter alia*, the FAR 52.233-1, DISPUTES (JUL 2002)—ALTERNATE I (DEC 1991) and 52.243-4, CHANGES (AUG 1987) clauses (R4, tab 4 at 90, 116, 121, 128).

4. The BHT contract specifications, § 01 33 00, "SUBMITTAL PROCEDURES," provided in pertinent part:

> 1.4 APPROVED SUBMITTALS
>
> The [CO's] approval of submittals shall not be construed as a complete check, but will indicate only that the general method of construction, materials, detailing and other information are satisfactory. Approval will not relieve the Contractor of the responsibility for any error which may exist, as the Contractor...is responsible for...the satisfactory construction of all work....
>
> 1.5 DISAPPROVED SUBMITTALS
>
> The Contractor shall make all corrections required by the [CO] and promptly furnish a corrected submittal in the form and number of copies specified for the initial submittal. If the Contractor considers any correction indicated on the submittals to constitute a change to the contract, a notice in accordance with the Contract Clause "Changes" shall be given promptly to the [CO].
>
> ....
>
> 1.9 SCHEDULING
>
> Submittals covering component items forming a system or items that are interrelated shall be...coordinated and submitted concurrently. Certifications to be submitted with the pertinent drawings shall be so scheduled. Adequate time (a minimum of 21 calendar days exclusive of mailing time) shall be allowed...for review and approval....
>
> ....

2

1.11.2  Deviations

For submittals which include proposed deviations requested by the Contractor, the column "variation" of ENG Form 4025 [TRANSMITTAL] shall be checked....

a. Contractor-proposed deviations, including variations and other departures from the contract requirements, shall be noted/marked in red on each copy of the submittal data and shall be provided with a letter attachment to the ENG Form 4025 summarizing the proposed variation, deviation, or departure.  Variations, deviations, or departures shall contain sufficient information to permit complete evaluation....  At the minimum the information shall include:

(1)  An explanation in detail of the reason for the variation and how it differs from that specified;
(2)  The cost difference; and
(3)  How the variation will benefit the Government.

(R4, tab 4 at 222, 224, 226)

5.  The BHT contract specifications, § 14 21 23, "ELECTRIC TRACTION PASSENGER AND SERVICE ELEVATORS," ¶ 1.2, "SUBMITTALS," required government approval of shop drawings, product data, design data calculated by a "Registered Professional Engineer," test reports, and certificates of all required state and local licenses of individuals performing for elevators and accessories "Quality Assurance for Elevator Inspector...Qualifications."  Section 14 21 23, ¶ 1.3, "ELEVATOR SYSTEM," stated:

Provide pre-engineered elevator system, by manufacturer regularly engaged in the manufacture of elevator systems, that complies with ASME A17.1 in its entirety, ASME A17.2[2] in its entirety, and additional requirements specified herein.

Submit detail drawings including:

---

[2]  ASME A17.1, A17.2 and A17.3 are not in the appeal record.

3

dimensioned layouts in plan and elevation showing the arrangement of elevator equipment, accessories, and data sheet showing all:

a. [S]upporting systems,
b. Anchorage of equipment,
c. Clearances for maintenance and operation;
d. Details on hoistway,
e. Doors and frames,
f. Operation and signal stations,
g. Machinery and Controls,
h. Motors,
i. Guide rails and brackets,
j. Points of interface with normal power.
k. Fire alarm system
l. Interface with emergency power systems.

Paragraph 1.4.1 provided in pertinent part:

Elevator Specialist

Work specified in this section must be performed under the direct guidance of the Elevator Specialist in compliance with ASME A17.3.[2] The Elevator Specialist must be regularly engaged in the installation and maintenance of the type and complexity of elevator system specified in the contract documents, and served in a similar capacity for at least three systems that have been performed in the manner intended for a period of not less than 24 months. Elevator system manufacturer must provide a letter of endorsement certifying that the Elevator Specialist is acceptable to manufacturer....

BHT contract § 14 21 23 described the elevator system performance characteristics in ¶ 2.1. (R4, tab 7 at 9-11, 13-15)

6. In 2008-2009, Paulette K. Daniels was president of PKD, located in Boerne, Texas, and David D. Daniels of Total Systems Contracting (TSC), co-located at the same Boerne, Texas street address, was vice president of PKD (R4, tab 10 at 3, 5, tab 12 at 12).

7. By 9 July 2008, Gilbane received elevator subcontract proposals from ThyssenKrupp Elevator and from PKD (R4, tab 8 at 1, 24).

4

8. Effective 26 August 2008, Gilbane subcontracted with PKD at the price of $597,000.00 for BHT facility elevators in accordance with the BHT contract drawings and specifications (R4, tab 3 at 38-39, 46).

9. On 16 October 2008, Gilbane sent USACE Transmittal No. 14 21 23-1[3] for elevator system item Nos. 1-6, 15-16, with detailed drawings, passenger elevators, accessories, supporting systems, machinery and controls, heat and reaction loads, and TSC shop drawings 090108-1, -2, and -3 drawn by Charles E. Hempel of Tannersville, Pennsylvania, for PKD (R4, tab 10 at 1-2, 9-11).

10. On 14 November 2008, USACE noted on Transmittal No. 14 21 23-1 code "E" ("disapproved," R4, tab 4 at 237), "RESUBMISSION REQUIRED," and set forth technical comments on this submittal, including each of TSC's shop drawings, and did not question whether PKD was a "manufacturer regularly engaged in the manufacture of elevator systems" (R4, tab 10 at 7-8).

11. On 20 January 2009, Gilbane sent USACE Transmittal No. 14 21 23-3 for elevator item No. 18, Quality Assurance, with Texas Department of Licensing and Regulation registrations for Elevator Inspector Paul E. Wilkens, expiring 10 July 2009, and PKD as Elevator Contractor, expired 26 July 2008 (R4, tab 15 at 1-5).

12. On about 21 January 2009, Gilbane sent USACE Transmittal No. 14 21 23-1.1 for elevator item Nos. 1-6, 15-16, including 8 drawings from Monitor Controls, 16 drawings from Gunderlin Elevator Cabs and Entrances, and updated TSC drawings 090108-1, -2, -3 (R4, tab 11 at 1-2, 5-38); and submittal No. 14 21 23-2 with component vendor product literature for elevator items Nos. 9-11, 13-14, 26-27, for passenger elevators, supporting systems, data sheets, logic control, field quality control, stainless steel and stainless steel diamond plate flooring (R4, tab 13 at 1, 13-14, 17-80).

13. On 27 January 2009, Gilbane sent USACE Transmittal No. 14 21 23-4 for item No. 28, elevator button finish sample (R4, tab 17 at 1-4).

14. On about 7 February 2009, Gilbane sent USACE Transmittal No. 14 21 23-3.1 with Texas Department of Licensing and Regulation registration for PKD as Elevator Contractor, to expire 26 July 2009 (R4, tab 16 at 1).

15. On 12 February 2009, USACE coded Gilbane's Transmittal No. 14 21 23-3 "X" (unexplained in record), noting expiration of PKD's Texas Elevator Contractor registration (R4, tab 15 at 11, 17) and coded Transmittal No. 14 21 23-3.1 "F" (receipt acknowledged, R4 tab 4 at 237) without further comments (R4, tab 16 at 1, 5).

---

[3] Submittal suffix numbers are emphasized to aid in tracking their submission and review facts.

16. On Transmittal Nos. 14 21 23-**1.1** and 14 21 23-**2**, on 18 February 2009 USACE coded "E RESUBMISSION REQUIRED" and stated, *inter alia*:

> It appears that PKD, Inc. is an elevator contractor submitting parts and pieces from various manufactures [sic] ralher [sic] than an engineered system backed by one manufacturer as the specifications [¶ 1.3] require.
>
> The design intent and intent or [sic] the specifications was to have a complete elevator system by one manufacturer regularly engaged in the manufacture of elevator systems.

(R4, tab 11 at 3-4, tab 13 at 1-12)

17. PKD's 21 February 2009 letter to Gilbane stated: "There are no 'pre-engineered elevator system' [sic] that would meet the specified...elevators; any firms' [sic] elevator will be a special engineered/designed elevator..." (R4, tab 12 at 10).

18. On 23 February 2009 and on 27 March 2009 USACE coded "E" on Transmittal No. 14 21 23-**4**, and stated: "Item 28 was rejected due to the CODE (E) on the related elevator submittals" (R4, tab 17 at 5, tab 18 at 9).

19. On 18 March 2009, Gilbane sent USACE Transmittal No. 14 21 23-**4.1** (tab 18 at 1, 3) and No. 14 21 23-**5** for elevator items 7-8, 12, 25 for wiring diagrams, sequence of operations, maintenance and diagnostic tools and traction controller, with Motion Control Engineering shop drawings and product data (R4, tab 19 at 1, 3-23).

20. On about 19 March 2009, Gilbane sent USACE Transmittal Nos. 14 21 23-**1.2** and 14 21 23-**2.1**, each with a 21 February 2009 letter cosigned by PKD's Paulette K. Daniels and David D. Daniels, stating, *inter alia*:

> PKD, Inc. is the fabricator (manufacturer), installer and provider of maintenance and warranty services for our elevators. In fabrication [sic] the elevators, PKD purchases parts, equipment, controls and other specialty materials from suppliers who specialize in only producing these essential components unique to the elevator systems. PKD employs the services of Charles E. Hempel, P.E. to provide the necessary engineering calculations and Main Layouts for elevators manufactured and installed by the company. PKD has maintained solid relationships with our engineer and all of

our suppliers' engineering departments spanning over twenty (20) years.... PKD and the following list of our suppliers are proud to be fully compliant with the "Buy American Act" requirements of the project specifications-

Motion Control Engineering, Rancho Cordova, CA-controllers, 1980
Hollister-Whitney...machinery, steel parts, est. 1906
Gunderlin, Ltd....cabs and entrances, est. 1950's
Monitor Controls, Happauge, NY-operating fixtures, est. 1950's
GAL Manufacturing...door operator packages, est. 1910.

(R4, tab 12 at 8) Gilbane forwarded PKD's list of contracts completed from October 1986 to February 2008, including several for elevator repairs, upgrading and modernization; three elevator installation contracts performed in 1991, 1994 and 1997 and a Navy contract for replacement of existing elevators completed in April 1999, about a decade before Gilbane's transmittals were submitted under this BHT contract. Gilbane forwarded sketches and engineering calculations; TSC's drawings 090108-1, -2, -3 revised 12 March 2009; and shop drawings and product data from Gunderlin, Monitor Controls, Motion Control Engineering, and Hollister-Whitney Elevator Corp. and their lower tier suppliers (R4, tab 12 at 1-2, 4-12, 15-70). Transmittal No. 14 21 23-**2.1** included PKC's Quality Control program and schedule and product samples (R4, tab 14 at 1-2, 4-133).

21. On 25 March 2009, USACE coded "E" on each of Transmittal Nos. 14 21 23-**1.2**, 14 21 23-**2.1** and 14 21 23-**5**, cited no non-compliances with specifications, and stated: "This company [PKD] is not a manufacturer regularly engaged in the manufacture of elevator systems" (R4, tab 12 at 1, 3, tab 14 at 1, 3, tab 19 at 2).

22. Gilbane's 25 March 2009 letter to USACE stated that rejection of PKD "as a qualified elevator manufacturer" constituted a contract change entitling Gilbane to compensation for obtaining "a substitute elevator manufacturer" (R4, tab 20 at 1-2).

23. USACE ACO Donald Haring's 26 March 2009 letter to Gilbane disagreed with Gilbane's position, stated that "by their own admission in Transmittal No. 14 21 23-**2.1**, [finding 20] they [PKD] do not manufacture elevator systems" and referred Gilbane to the contract's Disputes clause if it disagreed (R4, tab 21 at 1).

24. On 27 March 2009, USACE noted code "E" on Transmittal No. 14 21 23-**4.1** "due to the code E given to all of the corresponding elevator submittals" (R4, tab 18 at 9).

25. Effective 28 April 2009, Gilbane subcontracted with ThyssenKrupp for the elevator system at the price of $693,765 (R4, tab 3 at 60, 85).

26. The 3 May 2009 letter of PKD's Paulette Daniels to USACE stated that:

> [The government architect] stated to Gilbane that PKD appears to just purchase various elevator components, that we did not manufacture the elevators.
>
> *This is true, as it is for all elevator companies, large or small- components are outsourced. For federal projects, all companies would be purchasing from some if not all of the same suppliers we use, to comply with 'Made in America'. We do purchase components, but PKD engineers all components to come together as a final and complete product.*

(R4, tab 22 at 1)

27. On 14 July 2009, Gilbane submitted a certified $167,275 "REQUEST FOR EQUITABLE ADJUSTMENT AND FOR A CONTRACTING OFFICER'S FINAL DECISION" under the BHT contract to ACO Haring, alleging, *inter alia*, that "The USACE approved ThyssenKrupp's submittal for the elevator system despite the fact that ThyssenKrupp did not 'manufacture' all of the component parts of the elevator system that it proposed to install" (R4, tab 3 at 1-2, 5, 8). The CO's 1 February 2010 decision denied Gilbane's $167,275 claim (R4, tab 2). Gilbane timely appealed that decision to the ASBCA on 28 April 2010.

28. The 7 May 2013 affidavit of Mr. David D. Daniels stated, *inter alia*:

> 10. ...The elevator systems called for in the [BHT contract] Elevator Specifications were pre-engineered.... [T]he mechanical and electrical components specified and as proposed by PKD...are all standard, off-the-shelf components typical of the rated elevator system specified. PKD...has on many previous occasions designed, assembled and fabricated these same types of elevator components into an acceptable elevator system.
>
> 11. No single elevator company manufacturers [sic] all of the components of an elevator system. They all obtain components from various vendors and combine

8

those components to fabricate or manufacture an
elevator system.

(App. br., ex. A)

## DECISION

### I.

Appellant argues that PKD is a "manufacturer regularly engaged in the
manufacture" of pre-engineered elevator systems, citing *Cimetta Engineering &
Construction Co.*, ASBCA No. 24384, 80-2 BCA ¶ 14,550 and *Brinegar & Fuller, Inc.*,
ASBCA No. 22110, 80-1 BCA ¶ 14,334 for the interpretation that "manufacture"
includes "assembly" (app. br. at 8-12, exs. B, C).

Respondent argues that PKD did not propose an elevator system "by a
manufacturer regularly engaged in the manufacture of elevator systems," and that
"None [of the elevator parts] appear [sic] to be related, and none of the individual
parts appear [sic] to have been designed to specifically work together" (gov't br. at
12-13). Further, PKD admitted that it did not manufacture the elevator system and the
cases appellant cites are inapplicable to an elevator system (gov't br. at 13-15).

### II.

The disputed contract requirement is set forth in contract § 14 21 23, ¶ 1.3:
"Provide pre-engineered elevator system, by manufacturer regularly engaged in the
manufacture of elevator systems, that complies with ASME A17.1 in its entirety,
ASME A17.2 in its entirety, and additional requirements specified herein" (finding 5).

PKD's 21 February 2009 letter to Gilbane stated: "There are no
'pre engineered elevator system' [sic] that would meet the specified...elevators; any
firms' [sic] elevator will be a special engineered/designed elevator" (finding 17).
PKD's 21 February 2009 letter accompanying Gilbane's submittal Nos. 14 21 23-1.2
and 14 21 23-2.1 stated that "PKD, Inc. is the fabricator (manufacturer)...of...our
elevators" (finding 20). PKD's 3 May 2009 letter to USACE clarified:

> [The government architect] stated to Gilbane that PKD
> appears to just purchase various elevator components, that
> we did not manufacture the elevators.
>
> *This is true, as it is for all elevator companies, large or
> small- components are outsourced. For federal projects,*

9

*all* companies would be purchasing from some if not all of the same suppliers we use....

(Finding 26) The 7 May 2013 affidavit of PKD's vice president confirmed: "No single elevator company manufacture[s] all of the components of an elevator system. They all obtain components from various vendors and combine those components to fabricate or manufacture an elevator system" (finding 28). We hold that PKD has acknowledged that it is not "regularly engaged in the manufacture of pre-engineered elevator systems" and the past performance/experience documentation PKD submitted corroborates its admission. That documentation establishes, at most, that PKD might be considered a manufacturer on only one completed elevator project during the ten years preceding its submittal. Accordingly, its submittals were properly rejected. Since PKD has not established that it was regularly engaged in manufacturing elevators, we need not analyze the terms "manufacturer" and "pre-engineered."

## CONCLUSION

We deny the appeal.

Dated: 13 August 2014

DAVID W. JAMES, JR.
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

ROBERT T. PEACOCK
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

10

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 57206, Appeal of Gilbane Building Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

11